**LEISNOI, INC., Appellant,**

v.

**Omar N. STRATMAN; Mabel Marie Rice; Antoinette Burton and James Burton, Appellees.**

**Nos. 5–3774 to 5–3776, 5–3781.**

Supreme Court of Alaska.

June 26, 1992.

Rehearing Granted in part, Denied in part and Opinion Modified, July 24, 1992.*

---

* Justice Moore, dissents. He would grant the petitions for rehearing.

Edward A. Merdes, Law Offices of Merdes & Merdes, P.C., Fairbanks, for appellant.

Roger E. Henderson, Houston & Henderson, Anchorage, for appellee Omar N. Stratman.

William Grant Stewart, McCarrey & McCarrey, Inc., Anchorage, for appellee Mabel Marie Rice.

Alan L. Scmitt, Jamin, Ebell, Bolger & Gentry, Kodiak, for appellees Antoinette Burton and James Burton.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

In late 1985 and early 1986, Kodiak Island residents Omar Stratman, Mabel Marie Rice, Antoinette Burton and James Burton (Plaintiffs) instituted separate actions against Leisnoi, Inc. (Leisnoi) and Koniag, Inc. (Koniag) seeking specific performance of a settlement agreement which they had negotiated with Koniag. At the time of negotiation and signing of the settlement, Leisnoi had merged with Koniag and did not exist as a separate corporate entity. Later, the merger was set aside. Leisnoi claimed it was not bound by Koniag's settlement agreement with the Plaintiffs. The superior court ruled summarily that Leisnoi was bound by the settlement as a matter of law. After a trial on the merits, it awarded the Plaintiffs specific performance of the agreement. Leisnoi appeals. We conclude that the settlement agreement cannot be enforced against Leisnoi, and therefore reverse.

## I. FACTS AND PROCEEDINGS [1]

Omar Stratman,[2] Antoinette Burton and James Burton were cattle ranchers on Kodiak Island. Stratman held federal grazing leases encompassing roughly 45,400 acres. The Burtons were 50% shareholders in the Kodiak Cattle Co., which held a federal grazing lease to 21,005 acres.[3] Pursuant to the Alaska Statehood Act the State of Alaska selected the lands subject to the leases. Administration of the three leases was eventually transferred to the state. Later, Congress passed the Alaska Native Claims Settlement Act (Act or ANCSA), 43 U.S.C.A. §§ 1601–42 (West 1986 & Supp. 1992).

In 1974 Leisnoi was certified under ANSCA as a village corporation for the village

---

1. Because of the factual complexity of this case, a schedule showing the sequence of relevant events has been added as an Appendix.

2. Mabel Marie Rice is Omar Stratman's former spouse. Her interest in this litigation derives solely from Stratman's interest.

3. In 1979, the Burtons transferred their interest in the Kodiak Cattle Co. They then purchased the 35 acre tract on which they presently reside. Their interest in the present litigation concerns land surrounding the 35 acre tract which falls outside of the grazing leases and which is described by the agreement which became known as the Stratman Agreement.

of Woody Island. Leisnoi was eligible to select over 115,000 acres of public land as its entitlement under the Act. *See* 43 U.S.C.A. § 1613(a), (f) (West 1986). Under ANCSA, however, title to the surface estate would be severed from the subsurface estate. Leisnoi would receive title to the surface estate it selected; Koniag, the ANCSA regional corporation for the Kodiak Island region, would receive title to the subsurface estate as long as the lands were not part of a National Wildlife Refuge.[4] 43 U.S.C.A. § 1613(f) (West 1986).

Pursuant to its ANCSA entitlement, Leisnoi selected some land which partly overlapped the land subject to Stratman's and the Burtons' grazing leases.[5]

### The Decertification Litigation

In 1975 Antoinette Burton and others, in an association which eventually became known as the Citizens Action Group, met to discuss native land selections in the Kodiak area. The group learned that Woody Island and several other villages which were not originally named in ANCSA had claimed ANCSA village status. The group also learned that, upon certification, these villages could claim up to 800,000 acres of land on Kodiak Island.

In 1976 Omar Stratman, Antoinette Burton and others in the Citizens Action Group filed suit in federal district court against the Secretary of the United States Department of the Interior, seeking a permanent injunction preventing the transfer of any land patents from the United States to Leisnoi and several other ANCSA village corporations. The group alleged that injury to its recreational use of public lands would result from any such transfer. Stratman and Burton also alleged that they would incur a direct economic injury from any transfer as federal grazing leaseholders. The Plaintiffs amended their complaint in 1977 and joined as defendants Koniag, Leisnoi and other corporations which had claimed ANCSA village status. Although the Plaintiffs did not specifically request decertification of Leisnoi as an ANCSA-recognized corporation, this litigation became known as the decertification litigation.

In 1978 the federal district court dismissed for failure to exhaust administrative remedies claims based on injury to recreational use of public lands. Stratman's and the Burtons' remaining claims based on economic injury to their leaseholds were later dismissed for lack of a "case or controversy" after Leisnoi relinquished its ANCSA claims to the lands overlapping the grazing leases.

In 1981, however, the United States Court of Appeals for the Ninth Circuit ruled that allegations of potential injury to recreational uses were sufficient to satisfy constitutional requirements for standing to protest the land transfers. It therefore reinstated the decertification litigation as to Stratman and the Burtons.[6] *Stratman v. Watt,* 656 F.2d 1321 (9th Cir.1981).

### The Demerger Litigation [7]

Following the federal district court's dismissal of the decertification litigation, but prior to the federal circuit court's decision, the shareholders of Leisnoi and five other ANCSA villages in the region voted to merge their village corporations with Koniag, the regional corporation. On December 2, 1980, prior to the mergers, a member of the Afognak Native Corporation (Afog-

---

**4.** None of the lands actually selected by Leisnoi were wildlife refuge lands.

**5.** Leisnoi's selections rights, however, were subordinated to the pre-existing grazing leases, and any conveyance of the lands to Leisnoi would be subject to the terms of those leases. Koniag's right to the subsurface estate was similarly subject to the pre-existing grazing leases. *See* 43 U.S.C.A. § 1613(g) (West 1986).

**6.** After this ruling, the Citizens Action Group met for a last time. The group had achieved most of its goals, and only Stratman and the Burtons were willing to continue the litigation. Stratman and the Burtons personally guaranteed payment of all past and future fees and costs, and the group agreed that Stratman and the Burtons could seek to settle the case on their own if possible.

**7.** For convenience, we adopt the convention of the parties in referring to the derivative suit brought by Nicholas Shuravloff against Koniag, Leisnoi and others as the "demerger litigation."

nak) filed a derivative suit on behalf of himself and Afognak shareholders to set aside the proposed merger between Afognak and Koniag. He moved for a temporary restraining order the next day. The superior court stayed and later enjoined the merger of Afognak with Koniag. It found that the injunction was justified by serious and substantial issues of possible material misrepresentation in proxy solicitations submitted to Afognak shareholders.

Leisnoi and the four remaining village corporations accomplished the merger on December 10, 1980. The state issued a certificate of merger on that date. Thereafter Leisnoi ceased to exist as an independent corporation, and Koniag took over Leisnoi's defense in the federal district court decertification litigation. Koniag settled that litigation in March 1982 by entering into an agreement (Stratman Agreement) with Stratman and the Burtons.

On December 2, 1981, while Koniag was negotiating to settle the decertification litigation, a former Leisnoi shareholder named Nicholas Shuravloff filed a derivative suit on behalf of himself and other Leisnoi shareholders to set aside the merger of Leisnoi and Koniag. The parties have referred to Shuravloff's action as the demerger litigation. Stratman and the Burtons were not parties to this litigation.

On January 26, 1983, the superior court ruled on a motion for partial summary judgment that the joint proxy statement, which proposed the merger of Leisnoi and other village corporations with Koniag, was misleading. This court denied a petition for review of this decision and, on October 10, 1983, Koniag entered into a settlement agreement with all plaintiffs in the demerger litigation.[8] In the Stipulation for Set-

tlement, the parties included language stating that the merger of Leisnoi with Koniag was void *ab initio*. The superior court reiterated this language on January 27, 1984, in its order approving the settlement.[9]

As a result of the demerger settlement, the federal government transferred the surface estate for lands Leisnoi selected under ANCSA to Leisnoi rather than to Koniag. Koniag received the subsurface rights to those lands, including sand and gravel rights.

*The Stratman Agreement*

After the federal circuit court reinstated Stratman's and Antoinette Burton's claims in the decertification litigation, and while Leisnoi was merged with Koniag, the Koniag board of directors authorized Koniag's Chief Executive Officer, J.F. Morse, to negotiate a settlement of the decertification suit.[10] The ensuing negotiations, which occurred between November 1981 and March 1982, eventually led to the Stratman Agreement.

Mr. Morse and Koniag's land manager, Gene Sundberg, negotiated directly with Stratman and the Burtons to arrive at the terms of the settlement. Attorneys Roger Henderson, representing Stratman and the Burtons, and Dan Hensley, representing Koniag, were used primarily to reduce the parties' agreement to writing. Stratman and the Burtons were in contact with Henderson during the settlement negotiations. He was their attorney and agent at all times during the negotiations. During negotiations, Henderson and Hensley specifically discussed Koniag's desire to use a quitclaim deed to convey certain real property to Stratman and the Burtons. The

---

8. Koniag settled Shuravloff's demerger action in the same Stipulation for Settlement that it settled claims brought by shareholders of three other native village corporations. These claims also arose from the joint proxy statements.

9. The court's approval of the settlement was required under Alaska Civil Rule 23.1(i) which directs that "[a] derivative action may not be discontinued, abandoned, compromised or settled without the approval of the court having jurisdiction of the action."

10. The record indicates that at the time the settlement of the decertification litigation was being negotiated, Dan Hensley, counsel for Koniag believed that there was a 90% chance that Leisnoi would be decertified if the action was heard on the merits. Hensley was also counsel for Leisnoi prior to its merger with Koniag. Koniag would have lost all of Leisnoi's land selection rights under ANCSA had Leisnoi been decertified.

Stratman Agreement went through several drafts. The final document, which was reviewed and approved by the attorneys for both parties, was the result of arms length negotiations. Stratman and the Burtons were aware through Henderson of the pending demerger litigation between Leisnoi and Koniag.

Before the Stratman Agreement was signed and while the demerger litigation was still pending, Nicholas Shuravloff filed a motion for a temporary restraining order to enjoin Koniag from settling the decertification litigation with Stratman and the Burtons. The TRO also sought to prohibit Koniag from selling or encumbering any land "to which Leisnoi, Inc. would have been entitled, except for merger, because of its status as a village corporation under [ANCSA]." Henderson was present at the hearing on the TRO as counsel for Stratman and testified at the hearing on the subject of the Stratman Agreement.

The superior court denied Shuravloff's motion. It ruled that Koniag could not be adequately protected if an injunction was erroneously issued and the Stratman Agreement was not finalized. The court reasoned that the potential harm to both Koniag and Leisnoi posed by the decertification litigation was immeasurable, since that litigation could result in the extinction of Leisnoi's corporate existence and the elimination of its land and cash entitlement under ANCSA. Although the court recognized that Leisnoi was irreparably harmed by the Stratman Agreement's provision that certain land be conveyed to Stratman and the Burtons, it considered the preservation of Leisnoi's ANCSA status an overriding concern. The court therefore refused to enjoin Koniag from entering into the Stratman Agreement. The Stratman Agreement, which had been signed by Stratman and Antoinette Burton on March 3, 1982, and had been approved by the Koniag board of directors on March 5, 1982, thus became final.

Under the terms of the Stratman Agreement, Koniag agreed to quitclaim to Omar Stratman its interest in 17,637 acres of land which had been selected by Leisnoi pursuant to ANCSA and which substantially coincided with Stratman's grazing leases. Stratman agreed to pay Koniag $233,099.50 for the land. Similarly, the Burtons agreed to pay $34,133.50 for a quitclaim deed to roughly 1,100 acres of land surrounding the 35 acre tract on which they reside. Stratman and Antoinette Burton also agreed to dismiss the pending decertification litigation with prejudice.

After the execution of the Stratman Agreement, Stratman and the Burtons dismissed with prejudice the decertification litigation. Almost three years later, after the demerger of Leisnoi from Koniag, Stratman and the Burtons began to inquire about and demand conveyance of lands addressed in the Stratman Agreement. After Leisnoi received the surface rights to the lands in question in late 1985, it refused to honor the terms of the Stratman Agreement. Koniag tendered quitclaim deeds to its subsurface interest in the lands, but Stratman and the Burtons refused to accept this offer unless Leisnoi's surface estate was also conveyed to them. Stratman, Mabel Marie Rice and the Burtons then commenced separate litigation against Leisnoi and Koniag, each demanding specific performance from Leisnoi. The cases were eventually consolidated into this action.

*Procedural History*

After argument on cross-motions for summary judgment, the superior court ruled that the Stratman Agreement was binding on Leisnoi as a matter of law because, as to Stratman and the Burtons, Leisnoi was lawfully merged with Koniag at the time Koniag entered into the Stratman Agreement. The court also found that there existed genuine issues of material fact regarding whether specific performance of the agreement was appropriate and it denied summary judgment for specific performance.

Following a trial on the issue of specific performance in late 1988, the court reaffirmed its conclusion that the Stratman Agreement was a valid contract which was binding on Leisnoi. It determined that the language of the demerger settlement,

which stated that the merger was void *ab initio*, did not bind Stratman and the Burtons since they were not parties to the demerger litigation, nor were they in privity with parties to that litigation. It then granted specific performance of the Stratman Agreement, ordering that Koniag and Leisnoi convey by quitclaim deed the subsurface sand and gravel rights and the surface estate rights to the designated lands. Stratman was ordered to pay Leisnoi a total of $233,099.50 for the surface estate and an additional $1.00 per acre to Koniag for its subsurface sand and gravel rights. The Burtons were similarly ordered to pay Leisnoi $34,133.50 as agreed in the settlement and an additional $1.00 per acre to Koniag for the sand and gravel rights.[11]

The court also concluded that "Leisnoi, Inc. did not act unreasonably in resisting performance of the settlement agreement." It awarded the Burtons 25% of the attorney's fees they requested, and it awarded Stratman and Rice 25% of their averaged attorney's fees. Lastly, the court ruled that no damages for Leisnoi's breach of the Stratman Agreement could be claimed for the period prior to the court's summary judgment that Leisnoi was bound by that Agreement.

Leisnoi appeals the superior court's rulings that it is bound by the Stratman Agreement and that specific performance is an appropriate remedy. Rice appeals the order to pay Koniag an additional $1.00 per acre for sand and gravel rights to the land. Rice and the Burtons appeal the trial court's conclusion that Leisnoi did not act unreasonably in resisting performance of the Stratman Agreement. Stratman, Rice and the Burtons appeal the court's award of attorney's fees. The Burtons appeal the court's denial of their motion to modify the clerk's taxation of costs, and all three parties appeal the ruling that no damages could be claimed for the period prior to the court's entry of summary judgment.

## II. STANDARD OF REVIEW

We have held that a "decision to specifically enforce a contract is within the discretion of the trial court and will be reversed on appeal only where it is against the clear weight of the evidence." *Hausam v. Wodrich*, 574 P.2d 805, 809 (Alaska 1978). However, while we will generally defer to the trial court's balancing of equitable principles, we will review *de novo* the legal foundations of the trial court's decision. *See Hall v. Add–Ventures*, 695 P.2d 1081, 1087 (Alaska 1985) (grant of specific performance presumes existence of valid contract).

## III. DISCUSSION

Under Alaska corporations law, when the state issued the Koniag/Leisnoi certificate of merger, Koniag received all of the rights, powers, interests and obligations of Leisnoi.[12] As the only surviving entity of the merger, Koniag had actual authority to convey rights to land and settle claims. Koniag took precisely these actions when it entered into the Stratman Agreement. Were these the only facts, the likely result would be that Stratman and the Burtons became entitled to receive the

---

**11.** For purposes of the equity trial, the parties stipulated that the actual market value of the land to be sold to Stratman was approximately $2.4 million. The value of the land to be conveyed to the Burtons was approximately $1.1 million.

**12.** On December 10, 1980, when the state issued the certificate of merger joining Koniag and Leisnoi, former AS 10.05.405 (1957) provided in part:

(b) Merger or consolidation has the following effect....

(2) The separate existence of the corporations, except the surviving or new corporation, ceases....

(4) The surviving or new corporation possesses the rights, privileges, immunities and franchises, public and private, of the merging or consolidating corporations. All real, personal and mixed property, and all debts due, including subscriptions to shares, and all other choses in action, and every other interest of or belonging to or due to each of the corporations are transferred to and vested in the surviving or new corporation. The title to real estate or interest in real estate, vested in the corporations does not revert nor is it in any way impaired because of the merger or consolidation.

surface rights to the disputed land that Leisnoi had selected before the merger.

Leisnoi argues that Stratman's and the Burtons' knowledge of the Shuravloff demerger litigation must change this result. Leisnoi argues that the trial court's conclusion that Leisnoi is bound by the Stratman Agreement is not compatible with the court's Finding of Fact No. 127. According to Leisnoi, Stratman and the Burtons are not "innocent third parties" because of their knowledge of the demerger litigation and its potential effects. Leisnoi contends that because Stratman and the Burton's are not "innocent third parties," Leisnoi ought not be bound by the Stratman Agreement.

 We agree that Stratman and the Burtons are not "innocent" because of their knowledge of the demerger litigation. Moreover, we conclude that as successors in interest to Koniag, the interests of Stratman and the Burtons were fundamentally altered by the results of the Shuravloff litigation. Therefore, we conclude that the superior court erred when it determined that Leisnoi was legally bound by the Stratman Agreement.

The trial court, in Finding of Fact No. 127, made specific findings regarding knowledge Stratman and the Burtons directly and indirectly obtained:

> The court finds accordingly that prior to the time Omar Stratman and Antoinette and James Burton signed the Stratman agreement, they had indirectly through their agent Roger Henderson, actual knowledge of the demerger litigation. They, through Henderson, had knowledge that the relief sought in the demerger litigation was demerger, and that the claims raised in the *Shuravloff* suit were identical to the claims raised in the *Olsen* [Afognak demerger class action] suit. Finally, through Henderson,

they had knowledge that if demerger were granted, Leisnoi would be reconstituted as a separate corporation; *and its land selection rights would return to it.*[13]

(Emphasis added).

We believe that in ordering specific performance of the Stratman Agreement the trial court failed to understand the logical and legal consequences of this finding.

 Under the ancient doctrine of lis pendens, "[p]ersons acquiring an interest in property that is a subject of litigation are bound by, or entitled to the benefit of, a subsequent judgment." *Golden State Bottling Co. v. N.L.R.B.*, 414 U.S. 168, 179, 94 S.Ct. 414, 423, 38 L.Ed.2d 388 (1973); *see Farwest Steel Corp. v. Barge Sea–Span 241*, 828 F.2d 522, 524 (9th Cir.1987); *First National Bank of Anchorage v. Dent*, 683 P.2d 722, 724 (Alaska 1984). This doctrine is well established and is articulated today in the Restatement (Second) of Judgments (1982). In general, "[a] successor in interest of property that is the subject of a pending action to which his transferor is a party is bound by and entitled to the benefits of the rules of res judicata to the same extent as his transferor...." Restatement (Second) of Judgments § 44 (1982).

> The rationale for this rule is as follows:
>
> If property is transferred when an action is pending concerning it, the successor in interest may be aware of the litigation and seasonably join as a party, by intervention or by substitution in place of his transferor. In that circumstance, the successor then becomes bound because he is a party. If he is aware of the litigation but does not join as a party, he acquiesces in the transferor's continuing, for purposes of the litigation, to be the apparent owner of the interest in the property. His doing so is in effect treat-

---

**13.** The order entered on March 18, 1982, in the Shuravloff litigation denying Shuravloff's motion for a temporary restraining order clearly identified the conveyance from Koniag to the Stratman plaintiffs as part of the subject matter of the litigation. The order stated in part that "the court is aware that the plaintiffs have demonstrated, should the settlement be concluded,

that they will be faced with 'irreparable harm', in the sense that the terms of the settlement agreement include the conveyance of certain Leisnoi property to the Stratman plaintiffs." The parties have stipulated that this order was read to Mr. Henderson by Judge Serdahely over the phone and a copy of the order was sent to him by mail.

ing the transferor as his representative in the action.

Restatement (Second) of Judgments § 44 cmt. a (1982).

The traditional statement of the doctrine of lis pendens burdened even purchasers who were unaware of the pending litigation.[14] *See Golden State Bottling Co.,* 414 U.S. at 179, 94 S.Ct. at 422–23. This result was supported by considerations that:

> the successor usually has an express or implied right of indemnity against the transferor for loss resulting from the judgment; the successor changed the status quo regarding ownership and may justly be burdened with losses which might be expected possibly to result; and, if the rule were otherwise, the stabilizing effect of a judgment concerning the property could indefinitely be postponed by successive transfers.

Restatement (Second) of Judgments § 44 cmt. a (1982).

In addition to the weight of the above considerations, Stratman and the Burtons, as successors, had actual knowledge of Shuravloff's claims against Koniag and the potential effects of these claims. Therefore, Stratman and the Burton's interests under the Stratman Agreement were subject to Shuravloff's claims and the risk that Koniag's authority over the disputed land

would be compromised in the resolution of the demerger litigation. *See Dent,* 683 P.2d at 724.

Shuravloff owned shares of stock in Leisnoi. He sued Koniag and others, on his own behalf and on behalf of other prior Leisnoi shareholders,[15] alleging that the merger resulted from "a joint proxy statement which constituted a scheme to defraud and included untrue statements of material fact." In his complaint, Shuravloff sought a declaration that Leisnoi's merger with Koniag was null and void. He also asked the court to "[o]rder an accounting ... of Leisnoi's current assets now held in a constructive trust by Koniag and that those assets, when accounted for, be returned to Leisnoi." The findings of the trial court and principles of inquiry notice indicate Stratman and the Burtons knew or should have known of all these claims.

Shuravloff's claims were ultimately resolved by order of Superior Court Judge Douglas J. Serdahely. The order approved and incorporated a Stipulation for Settlement (demerger settlement) between Koniag, Shuravloff and others. In addition to rendering void the merger between Koniag and Leisnoi, the intent of the demerger settlement was "insofar as possible to return the property which belongs to [Leisnoi]."[16]

---

**14.** In this case we need not and do not decide whether lis pendens binds a successor who lacks even inquiry notice of pending litigation affecting the property.

**15.** Our dissenting colleague points out that Leisnoi was a defendant in Shuravloff's derivative suit, apparently suggesting that, because of its status in that litigation, Leisnoi should not benefit from our resolution of this case.

Shuravloff brought his suit on his own behalf and on behalf of other former Leisnoi shareholders to remedy alleged misdeeds of Leisnoi's directors and others. We fail to perceive why Leisnoi's status as a nominal defendant should preclude the former shareholders from receiving the benefits of Shuravloff's action.

**16.** The demerger settlement stated, in pertinent part:

> WHEREAS ...
> A Joint Proxy Statement requesting approval of merger was distributed to the shareholders of Koniag, Inc. and the village corporations participating in the proposed merger; and ...

The Superior Court for the State of Alaska has decided that the Joint Proxy Statement was false and misleading because it stated that the timber resources involved in the merger could not be valued, the proxy statement did not disclose the value of the timber to the shareholders who were called upon to decide whether or not to merge, and because the proxy statement did not make it clear that the $2,100 being distributed to the village corporation shareholders were monies owned by the village corporations which could have been distributed to the shareholders without merger; and ...

The parties think the fair way to settle their differences is to dissolve the merger between Koniag ... and Leisnoi ... and insofar as possible to return the property which belongs to [Leisnoi] ...

NOW, THEREFORE ...

Koniag will transfer any and all land, timber, interest in land and timber, contract rights, or any other interests of any kind of which Leisnoi ... [was] possessed or to which [it was] entitled ... or would have subsequent-

■ We conclude that the trial court erred when it determined that Leisnoi was legally bound by the Stratman Agreement and erred when it ordered Leisnoi to convey the surface rights to the land in dispute to Stratman and the Burtons. The trial court found that Stratman and the Burtons had knowledge of the demerger litigation and that they were aware that "if demerger were granted, Leisnoi would be reconstituted as a separate corporation; and its land selection rights would return to it." Under the doctrine of lis pendens and in accordance with Restatement (Second) of Judgments § 44 (1982), the rights of Stratman and the Burtons under the Stratman Agreement were subject to the claims of Shuravloff.[17] Stratman and the Burtons were bound by the demerger settlement which resolved Shuravloff's claims, rendered the merger of Koniag and Leisnoi void and returned the surface rights to the disputed land to Leisnoi. As to Stratman and the Burtons, who had knowledge of the demerger litigation, Koniag had no authority to agree to a future conveyance of Leisnoi's assets. Therefore, Leisnoi is not legally bound by the Stratman Agreement.[18]

Rice, claiming through Stratman, argues that demerger is a disfavored remedy. Therefore, at the time of the Stratman Agreement, Stratman and the Burtons could not reasonably expect the Shuravloff litigation to result in demerger or invalidation of rights under the Stratman Agreement.[19] We are not persuaded.

■ The equitable power of a court to set aside a merger is well established. 18A Am.Jur.2d Corporations § 1111 (1985). Moreover, a party's erroneous forecast of the future result of litigation does not affect the operation of the lis pendens doctrine.[20] A purchaser of land who has no-

ly [sic] become entitled but for [its] merger with Koniag.

17. Our dissenting colleague maintains that the land at issue in this case was not the subject of Shuravloff's suit and that application of the lis pendens doctrine is improper. He suggests that in determining whether lis pendens is appropriate we look to the "gravamen of the complaint in the pending litigation." *Infra*, p. 1213 (citing *Rubinfeld v. Mappa*, 42 Misc.2d 464, 248 N.Y.S.2d 276, 277 (N.Y.App.Civ.1964).

In reaching our conclusion, we do not alter the doctrine of lis pendens. From our review, we conclude that the gravamen of Shuravloff's suit was a claim that the fundamentally flawed merger of Koniag and Leisnoi should be declared void and that Leisnoi's assets, comprised largely of interests in real property, should be returned to it. The findings of the trial court, including Finding of Fact No. 127, remove any doubt that Stratman and the Burtons knew that the Shuravloff complaint involved the property at issue in this case.

The dissent's comments regarding AS 09.45.-790 which permits the recordation of a notice of pending action are misfocused. The common law doctrine of lis pendens has not been altered by the enactment of AS 09.45.790. Through AS 09.45.790, the legislature merely provided a convenient method for giving constructive notice to subsequent purchasers and encumbrancers that their interests may be affected by a pending action. *Brooks v. R & M Consultants, Inc.*, 613 P.2d 268, 270 (Alaska 1980). In this case, where the trial court found that Stratman and the Burtons had actual notice of the demerger litigation, there was no need for it to rely upon constructive notice. Moreover, had a statutory notice of lis pendens been filed and been found wanting, any insufficiency could have been cured through an amendment to the complaint.

Further, we do not believe that our decision today fosters uncertainty and peril in corporate affairs. It does require that those who are on notice of a claim protect themselves against the possibility that the claim has merit.

18. Because of our holding that Leisnoi is not bound by the Stratman Agreement, the arguments of Stratman, the Burtons and Rice regarding attorney's fees and costs are moot. Stratman, the Burtons and Rice are not "prevailing parties" under Alaska Civil Rule 82. Therefore, the trial court's awards of attorney's fees and costs must be vacated.

Our holding also renders moot the appeal of the trial court's conclusion that Leisnoi did not act unreasonably in resisting performance of the Stratman Agreement.

We decline to address Rice's appeal regarding the amount payable to Koniag for subsurface rights. Koniag was dismissed from these consolidated appeals. In light of our holding, the issue is not relevant as to Leisnoi.

19. The Burtons also dispute whether Shuravloff was likely to prevail in the demerger litigation and seem to argue that because they did not expect Shuravloff to prevail on his claims, they should not be bound by the result.

20. We find the argument of Stratman and the Burtons that they could not reasonably expect the result of the demerger litigation disingenuous in light of their knowledge that Shuravloff's claims were identical to those of Olsen in the

tice of litigation affecting the land and notice of the relief claimed in the litigation, is bound by the result of the litigation irrespective of the "likelihood" of the result. *See Golden State Bottling Co.,* 414 U.S. at 179, 94 S.Ct. at 422; *Farwest Steel Corp.,* 828 F.2d at 524; *Dent,* 683 P.2d at 724. The trial court specifically found that Stratman and the Burtons were aware that a potential result of the Shuravloff litigation was demerger and restoration of Leisnoi's rights to land. They are bound by that result.

■ Rice contends that there has never been a judicial determination that the proxy statements at issue in the demerger litigation were fraudulent. We do not consider the lack of such a finding to be determinative. The trial court had adequate grounds to set aside the merger. It found that the proxy statements were "false and misleading, and material, as a matter of law." We need not explore the distinctions between fraudulent and materially misleading proxy statements. Proper relief for a materially misleading solicitation which results in corporate merger may include setting aside the merger. *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 386, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970). Further, Stratman and the Burtons would be bound by the judgment under the doctrine of lis pendens even if it were strictly a stipulated judgment, as reflected in the Restatement (Second) of Judgments § 44 (1982).

Having concluded that there is no enforceable contract between Leisnoi on the one hand and Stratman, Rice and the Burtons on the other, the judgment of the superior court is REVERSED, the award of attorney's fees is VACATED, and the case is REMANDED to the superior court with directions to enter judgment dismissing the claims of Stratman, Rice, and the Burtons for legal and equitable relief against Leisnoi.

MOORE, J., dissents.

Afognak litigation and in light of the injunction against the merger of the Afognak Native Corpo-

MOORE, Justice, dissenting.

In spite of the complex factual setting of this case, the issues here are simple. First of all, did Koniag have the legal authority to enter into a binding agreement with Stratman and Burton? Secondly, if Koniag had such legal authority, are Stratman and Burton entitled to specific performance against Leisnoi, Koniag's successor?

The majority concludes, and I agree, that under Alaska corporations law, Koniag acquired all of the rights, powers, interest and obligations of Leisnoi as a result of the merger, and that, at the time of the Stratman Agreement, Koniag had the authority to contract to convey the former assets of Leisnoi and to settle litigation in which Leisnoi had been a party. Consequently, at the time the Stratman Agreement was executed, it was a binding and enforceable contract. However, in reversing the trial court's award of specific performance to Burton and Stratman, the majority not only departs from the standard of review which it purports to apply, but it fails to provide a sound legal justification for the result it reaches. Instead, the majority relies on a strained interpretation of a doctrine which other courts have narrowly circumscribed.

In reviewing decisions to specifically enforce contracts, we defer to the discretion of the trial court unless the clear weight of the evidence requires reversal. *Stenehjem v. Kyn Jin Cho,* 631 P.2d 482 (Alaska 1981). Here, the majority effectively abandons this standard of review, engages in its own balancing of the equities, and substitutes its own judgment for that of the trial court, while claiming it is merely reviewing "*de novo* the legal foundations of the trial court's decision." In *Hall v. Add–Ventures, Ltd.,* 695 P.2d 1081 (Alaska 1985), which the majority cites as the precedent allowing the broad review it affords here, we reversed the denial of specific performance because we disagreed with the trial court's conclusion that no enforceable contract had been formed. No such funda-

ration and Koniag.

mental legal prerequisite to specific performance is at issue in the present case.

Here, the trial court was within its discretion and properly exercised its equitable powers in awarding specific performance to Stratman and the Burtons, and the clear weight of the evidence does not require reversal. In entering into the Stratman Agreement, Koniag conferred a substantial benefit on the former shareholders of Leisnoi. In exchange for Koniag's agreement to convey the acreage to them at below market price, Stratman and Burton agreed to drop the decertification litigation which, if pursued, almost certainly would have resulted in the decertification of Leisnoi and the complete extinction of its entitlement to land and other corporate assets under ANCSA.[1] Leisnoi, the party benefitting from the court's decision today, was itself not an innocent party, but rather was a defendant in the demerger litigation charged with preparing fraudulent joint proxy statements.[2] Furthermore, the principles of *res judicata* cannot be a basis for denying specific performance, as no final judgment containing a finding of fraud was ever rendered in the demerger litigation.[3] Finally, it is inequitable to allow a voluntary settlement agreement between Leisnoi and Koniag to defeat the legitimate expectation interests of Stratman and the Burtons arising from the Stratman Agreement. It is untenable, either as a matter of law or equity, that the knowledge of Stratman and Burton of the demerger litigation or that settlement of that litigation should preclude them from obtaining specific performance of an otherwise valid and enforceable contract. The majority cites no legal authority for the proposition that such knowledge precludes the availability of the remedy of specific performance.

To reach its desired result, the majority incorrectly treats this case as one involving conflicting claims to title of real property when the real issue is the enforceability of a contract for the conveyance of real property. The majority relies on the doctrine of *lis pendens* as articulated in § 44 of the Restatement (Second) of Judgments (1982) which states that "[a] successor in interest of *property that is the subject of a pending action* to which his transferor is a party is bound by ... the rules of res judicata to the same extent as his transferor...." (Emphasis added). The principle has its roots in both common law and equity jurisprudence. 54 C.J.S. *Lis Pendens* § 1 (1948); 51 Am.Jur.2d *Lis Pendens* § 1 (1970). Under the doctrine, at both common law and in equity, the mere pendency of a suit affecting the title to real property constituted constructive notice to the world of a disputed claim regarding the title. *Kelly v. Perry*, 111 Ariz. 382, 531 P.2d 139, 140–41 (1975).

Under the majority's reading of this principle, the property which Koniag agreed to convey in the Stratman Agreement was "the subject" of Shuravloff's shareholder action. In other words, the majority apparently believes that a shareholder's suit alleging fraud in proxy statements is a suit affecting title to real property. An exami-

---

1. During settlement negotiations in the decertification litigation, a Koniag attorney who had represented Leisnoi prior to the merger stated his belief that there was a 90% chance that Leisnoi would be decertified if the action was heard on the merits. *See* footnote 10 of majority opinion.

2. In footnote 17, the majority refers to Leisnoi as a "nominal defendant" in the demerger litigation. Here, Leisnoi (including its officers, directors, and shareholders) was involved in multiple lawsuits and benefited directly from the final settlements between all parties, ultimately receiving surface rights to over 100,000 acres of public land worth millions of dollars to which they may not have been entitled. It can be nothing more than fiction to say Leisnoi was only a "nominal defendant," and thus excused from honoring its contractual obligations under the settlement agreement negotiated by its predecessor Koniag with Stratman and the Burtons. The result reached by the majority effectively holds Stratman and the Burtons, who were not even "nominal parties" to the demerger litigation, accountable for the misdeeds of Leisnoi.

3. Although, on motion for partial summary judgment, the trial court in the demerger litigation found Leisnoi and Koniag had included material misrepresentations and omissions in the proxy statements, these findings were never reduced to a final judgment.

nation of the law and facts reveals the transparency of this proposition.

An essential element for the invocation of the doctrine of *lis pendens*, and one which the majority ignores, is that the pleadings in the pending litigation must contain a description of the real property in question. *Herman v. Goetz*, 204 Kan. 91, 460 P.2d 554, 559 (1969); *Flanagan v. Clark*, 156 Okl. 230, 11 P.2d 176 (1932). Here, the complaint in the demerger litigation contained no such description, and that litigation concerns title to real property only in the remotest sense.

In assessing whether Shuravloff's suit was an action "affecting title to real property," it is instructive that the pendency of the demerger litigation would have been an insufficient basis for the recordation of a *lis pendens* notice under Alaska's statutory *lis pendens* procedure.[4] This court has previously held that *lis pendens* is inappropriate in a shareholder's action against corporate directors for alleged breach of fiduciary duty and breach of contract rights because such an action is not one affecting "the title to or the right to possession of real property." *Blake v. Gilbert*, 702 P.2d 631, 642–43 (Alaska 1985).[5]

The majority sees the prayer for relief in Shuravloff's complaint asking the court to order an accounting and return of Leisnoi's assets as sufficient to make the demerger suit a case concerning real estate. The mere request in a complaint for an accounting is not an appropriate basis for the invocation of the *lis pendens* doctrine. ,*See Kelly v. Perry*, 111 Ariz. 382, 531 P.2d 139 (1975) (*lis pendens* inappropriate in action by joint venturer to dissolve joint venture, to impose constructive trust on specific parcel and seeking accounting). In determining whether *lis pendens* is appropriate, courts should look to the gravamen of the complaint in the pending litigation. *Rubinfeld v. Mappa*, 42 Misc.2d 464, 248 N.Y.S.2d 276 (N.Y.App.Div.1964).[6] In the present case, Shuravloff's suit alleged breach of fiduciary duty and illegal material omissions and misstatements in proxy materials seeking approval of the merger between Koniag and Leisnoi. The complaint is devoid of any specific allegations relating to any specific real property, much less the property which Koniag agreed to convey in the Stratman agreement. Because real property was not the subject of Shuravloff's suit, the majority's reliance on the doctrine of *lis pendens* and § 44 of the Restatement (Second) of Judgments is misplaced.

*Lis pendens* is a doctrine based on public policy and convenience and is predicated on the view that

**4.** Alaska Statute 09.45.790 permits the recordation of a notice of the pendency of an action "affecting the title to or the right of possession of real property...." Such recordation gives constructive notice of the pendency of such actions.

**5.** Other courts have similarly concluded that statutory *lis pendens* is inappropriate in shareholder suits unless title to specific real property is the central focus of the action. *See Pacific Lumber Co. v. Superior Court (Martel)*, 226 Cal. App.3d 371, 276 Cal.Rptr. 425 (1990) (*lis pendens* inappropriate in former shareholder's action challenging merger for alleged fraud); *5303 Realty Corp. v. O & Y Equity Corp.*, 64 N.Y.2d 313, 486 N.Y.S.2d 877, 476 N.E.2d 276 (1984) (*lis pendens* inappropriate in suit for specific performance of contract for sale of stock representing beneficial ownership of real estate; doctrine should be narrowly applied to those suits directly affecting property); *Mohican Valley, Inc. v. MacDonald*, 443 So.2d 479 (Fla.App. 1984) (*lis pendens* permitted in shareholder de-

rivative suit to cancel deed to specific property allegedly transferred fraudulently); *Grossfeld v. Beck*, 42 A.D.2d 844, 346 N.Y.S.2d 650 (1973) (*lis pendens* permitted in shareholder derivative action seeking to impress constructive trust on specific real property but not in action for waste of corporate assets); *Cutter v. Cutter Realty Co.*, 265 N.C. 664, 144 S.E.2d 882 (1965) (*lis pendens* inappropriate in shareholder derivative action to prevent officers and directors from executing deed conveying title and to rescind contract of sale of land).

**6.** In *Rubinfeld*, the court stated that

[t]he mere fact that the word "realty" or similar words are used in the complaint or that one of the prayers for relief seeks a transfer of title to realty, is not determinative unless supported by appropriate allegations. It is not the title of the action, nor the prayer for judgment, but the facts set out in the complaint which determine the kind and character of the action.

248 N.Y.S.2d at 277.

once a court has taken cognizance of a controversy, it should be impossible to interfere with consummation of the judgment by any ad interim transfer, encumbrance, or change of possession. In support of this view, it has been observed that without the doctrine of lis pendens, litigation could become interminable as a result of mesne conveyances and the ensuing necessity of introducing the transferees as parties, and that on the termination of one action, another would be initiated, with the result that the courts could not effectively determine litigation involving property.

51 Am.Jur.2d *Lis Pendens* § 3 (1970) (footnotes omitted). Contrary to the majority's reasoning, the claims of Shuravloff are not inconsistent with the claims of Stratman and Burton arising from the Stratman Agreement. The existence of the Stratman Agreement in no way impaired the ability of the court in the shareholder's action to award relief for the claims contained therein. The concerns underlying the *lis pendens* doctrine are simply not present in this case.

Though the scope of the majority's decision is uncertain, the rule of law fashioned by the court today effectively deprives an individual challenging a corporate merger, who has knowledge of pending litigation, of the ability to contract with the corporation without considerable risk that such agreements may ultimately prove unenforceable. By invoking the *lis pendens* doctrine, the result may be to charge even those unaware of the pending litigation with constructive notice of the litigation, thus precluding them from entering into enforceable agreements involving the transfer of corporate assets. The majority opinion could even be read to deprive a corporation involved in demerger litigation of the authority or capacity to engage in any transaction resulting in the sale, transfer, or exchange of any corporate assets. Regardless of its interpretation, the court's holding today injects uncertainty and peril into commerce and corporate affairs in contravention of the important public policy interest in enhancing the certainty and finality of contracts.

The majority recognizes the authority of Koniag to enter into binding agreements during the period in which it was merged with Leisnoi. Nonetheless, it gropes futilely to find a sound legal basis to justify its desired result. In my opinion, the clear weight of the evidence does not require reversal. In light of the legal and equitable principles outlined above, and in light of the strong public policy favoring the enforcement of agreements settling disputed claims, *see Municipality of Anchorage v. Schneider*, 685 P.2d 94, 98 (Alaska 1984), I would leave the parties with the agreement they negotiated for themselves and would affirm the trial court's balancing of the equities and award of specific performance.

Accordingly, I DISSENT.

APPENDIX

Timeline of Relevant Facts

| Date | Event |
| --- | --- |
| 12/18/71 | Alaska Native Claims Settlement Act (ANCSA) provides for the establishment of native regional and village corporations. Koniag, Inc. is established as the regional corporation for the Kodiak archipelago. |
| 1974 | Leisnoi, Inc. is certified as the village corporation for the village of Woody Island. |
| 1976 | Stratman, Burton and others file suit in federal district court against U.S. Department of Interior, Koniag, Leisnoi and others ("decertification litigation"). |
| 1978 | Federal district court dismisses the decertification litigation. |
| 12/03/80 | Alaska superior court stays and later enjoins the merger of Afognak Native Corporation and Koniag. |
| 12/10/80 | Leisnoi merges with Koniag. |
| 09/08/81 | United States Court of Appeals for the Ninth Circuit reinstates the decertification litigation as to Stratman and the Burtons. |

| Date | Event |
|---|---|
| 11/11/81 | Negotiations begin between Stratman, the Burtons and Koniag to settle the decertification litigation. |
| 12/02/81 | Former Leisnoi shareholder Nicholas Shuravloff files derivative class action in state court to set aside merger ("demerger litigation"). Stratman and the Burtons learn of the pending demerger litigation through their attorney. |
| 02/22/82 | Shuravloff asks the superior court to enjoin Koniag from settling the decertification litigation with Stratman and the Burtons. |
| 03/03/82 | Stratman and the Burtons sign the "Stratman Agreement." Agreement provides for dismissal of the decertification litigation and conveyance of land to Stratman and the Burtons. |
| 03/05/82 | Koniag approves the Stratman Agreement. |
| 03/18/82 | Alaska superior court denies Shuravloff's request for injunction preventing Koniag from entering into the Stratman Agreement. |
| 01/26/83 | Superior court rules that the joint proxy statements which proposed the merger of Leisnoi and Koniag are misleading. |
| 10/10/83 | Koniag settles the demerger litigation with Shuravloff. The Stipulation for Settlement states that merger of Leisnoi with Koniag was void <u>ab initio</u>. |
| 01/27/84 | Superior court approves demerger settlement in an order incorporating the Stipulation for Settlement. |
| 11/21/85 | United States Department of the Interior conveys the surface estate of the disputed land to Leisnoi and the subsurface estate to Koniag. |
| 11/25/85 | Leisnoi refuses to honor the terms of the Stratman Agreement regarding conveyance of the disputed land. |